[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13258
Non-Argument Calendar
_____

D.C. Docket No. 1:16-cv-02425-LMM


CHRYSTEN WRIGHT, et al.,

Plaintiffs,

MONIQUE SIMMS,
SAMMY DAVIS,

Plaintiffs - Appellants,

versus

SCALES 925 ATLANTA, LLC, et al.,

Defendants,

CLIFFORD JOSEPH HARRIS, JR.,
CLIFFORD JOSEPH HARRIS, JR.,
d.b.a. The Royal Group LLC,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(February 5, 2019)

Before TJOFLAT, JORDAN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Plaintiff-Appellants Monique Simms and Sammy Davis appeal the grant of summary judgment to Defendant-Appellee Clifford Harris, Jr., on their claims arising out of their employment at Harris's now-closed restaurant, Scales 925. The question in this appeal is whether Harris can be held personally liable for these claims. The district court concluded that Harris was protected against personal liability by the legal form of a limited liability company ("LLC"), so it granted summary judgment in his favor. Simms and Davis dispute several aspects of the court's reasoning, but they have identified no error, so we affirm.

**I.**

In December 2014, defendants Harris and Charles Hughes[1] were approached about lending celebrity and financial support to Vibe Restaurant and Bar, which

_____

[1] As we explain in more detail below, Charles Hughes was a defendant in the district-court proceedings, but he is not implicated in this appeal. Hughes was dismissed in the district court-proceedings after the claims against him were settled.

2

was located on Ivan Allen Boulevard in Atlanta. Harris—a rapper,[2] actor, and entrepreneur—is also a promoter for various entertainment venues.

Shortly after Harris and Hughes were approached about Vibe Restaurant and Bar, the restaurant managers at the time—the Social Life Restaurant Group ("Social Life") and the Venue Restaurant Group ("Venue")—signed a contract concerning Vibe ("the Vibe Agreement") with The Encore Group, LLC ("Encore"), and The Royal Group, LLC ("Royal"). Hughes signed on behalf of Encore as its sole member. Harris, in turn, signed on behalf of Royal as its sole member. It is undisputed that Royal was not a validly formed LLC.

The Vibe Agreement called for the creation of a "joint venture entity" to take over day-to-day management of restaurant operations. In exchange for taking over these management responsibilities and making capital improvements, Royal and Encore were entitled to 75% of all net profits generated each month. The lease remained in the names of Venue and Social Life.

Harris and Hughes then enlisted the help of an attorney to form two LLCs—Scales 925 Atlanta Management, LLC and Scales 925 Atlanta, LLC—and they renamed the restaurant Scales 925 ("Restaurant"). These LLCs were validly formed in January 2015. The attorney who organized these entities drafted operating agreements for each of them, though the agreements were never signed.

---

[2] Harris is known in the entertainment world as "T.I."

3

The operating agreement for Scales 925 Atlanta Management, LLC, stated that Royal and Encore would each own a 45% stake, with two other individuals holding the remaining 10%. The operating agreement for Scales 925 Atlanta, LLC, provided that it was to be owned solely by Scales 925 Atlanta Management, LLC.

In mid-2015, Simms and Davis were hired as the Restaurant's general manager and executive chef, respectively. They executed employment agreements reflecting, among other things, their salaries and bonus compensation. Simms's employment agreement is not in the record, but we assume, as the parties agree, that it is identical to Davis's in all respects relevant to this appeal. According to Davis's employment agreement, the contract was executed "by and between SCALES 925 ATLANTA, LLC (the 'Company'), . . . and Sam Davis." The agreement stated that Davis agreed to the supervision of "the Company's management, [Harris] and [Hughes]." Hughes signed the agreement on behalf of Scales 925 Atlanta, LLC as its "managing member." Harris was not listed as a party to the agreement and did not sign the agreement.

Just over a year after the Restaurant opened, several servers at the Restaurant joined Simms and Davis in a lawsuit against Harris, Hughes, Venue, and the two Scales LLCs. They alleged claims of breach of contract, failure to pay minimum and overtime wages, and fraud. The servers eventually settled their claims against the defendants, and Simms and Davis dismissed their claims with prejudice against

4

Hughes, Venue, and the two Scales LLCs.  So Simms and Davis are the only remaining plaintiffs, and Harris is the only remaining defendant.

Simms and Davis did not allege that Harris personally committed any of the acts on which their claims were based.  The bad actor for each of their claims—for breach of the employment agreements, failure to pay final paychecks, and common-law fraud and deceit[3]—was identified as Hughes, who was more actively involved in managing the Restaurant.  Nevertheless, Simms and Davis alleged that the defendants were "all business partners" operating the Restaurant and that, as a result, Harris was "jointly and severally liable" for actions taken by Hughes "[a]s a general partner" on behalf of the Restaurant.

After discovery, the district court granted summary judgment to Harris. Citing supplemental briefing submitted at the court's request, the court explained that Simms and Davis based Harris's liability for all claims on two main theories: (1) common-law partnership or joint venture; and (2) piercing the corporate veil. But if neither of these two theories was viable, the court stated, Harris was shielded from personal liability under Georgia law applicable to LLCs.  *See* O.C.G.A. § 14-11-303(a).  Then, concluding that the evidence did not support the first theory and that the second theory was not properly raised, the court determined that Harris

---

[3] One other claim, for deceptive business practices, was dismissed by the district court based on a motion to dismiss.  The appellants have abandoned this claim by failing to clearly raise it on appeal.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) (issues not plainly raised on appeal are abandoned).

5

was not liable and granted his motion for summary judgment.  This appeal followed.

## II.

We review a decision to grant summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Haynes v. McCalla Raymer, LLC*, 793 F.3d 1246, 1249 (11th Cir. 2015). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Georgia law governs our resolution of this matter.

## III.

The central dispute in this case concerns the legal structure under which Harris and Hughes managed the Restaurant.  Simms and Davis maintain that the Restaurant was operated as a partnership, which would make Harris, as a partner, "jointly and severally liable for all debts, obligations, and liabilities of the partnership."[4]  O.C.G.A. § 14-8-15.  In contrast, Harris contends, and the district court found, that he and Hughes clearly intended to and did operate the Restaurant

---

[4] Simms and Davis also present arguments relating to their "joint venture" theory of liability. *See Kissun v. Humana, Inc.*, 479 S.E.2d 751, 752 (Ga. 1997); *Boatman v. George Hyman Constr. Co.*, 276 S.E.2d 272, 274–75 (Ga. Ct. App. 1981).  But as the court explained, a joint-venture agreement, like a partnership agreement, depends on the intent of the parties involved. *See Aaron Rents, Inc. v. Fourteenth St. Venture, L.P.*, 533 S.E.2d 759, 762 (Ga. Ct. App. 2000).  Because we conclude that the evidence is clear that Harris and Hughes intended to operate the Restaurant as an LLC, the joint-venture theory fails for the same reasons as the partnership theory.

6

as an LLC, and that he is shielded from liability by that legal form. *See id.* § 14-11-303 (stating that a "member, manager, agent, or employee of a limited liability company is not liable," solely by reason of that status, for the obligations of the LLC or "for the acts or omissions of any other member, manager, agent, or employee of the limited liability company, whether arising in contract, tort, or otherwise"). Harris also notes that he did not sign the employment agreements at issue, and so he asserts he cannot be held liable for breach of contract.

A partnership under Georgia law is "an association of two or more persons to carry on as co-owners a business for profit." *Id.* § 14-8-6(1). Courts generally look to several factors to determine the existence of a partnership, including "a common enterprise, the sharing of risk, the sharing of expenses, the sharing of profits and losses, a joint right of control over the business, and a joint ownership of capital." *Aaron Rents, Inc. v. Fourteenth St. Venture, L.P.*, 533 S.E.2d 759, 747–48 (Ct. App. Ga. 2000). "But the intention of the parties is the true test of whether there is partnership." *Id.*

Here, we agree with the district court that Harris and Hughes clearly intended to and did operate the Restaurant as an LLC, not a partnership. After entering into the Vibe Agreement, they formed two valid LLCs for the purpose of managing restaurant functions, and these two LLCs were, as the court stated, "consistently utilized to run the Scales 925 restaurant." The plaintiffs'

7

employment agreements clearly state that they were executed by and between "Scales 925 Atlanta, LLC," an existing LLC, and the plaintiffs, and Hughes signed the contract on behalf of the LLC as its "managing member," not in his individual or some other capacity. In addition, Scales 925 Atlanta, LLC, was listed as the employer on each plaintiff's W-2 and paystubs, and the checks in the record that were signed by Harris personally were all paid out of a "Scales 925 Atlanta, LLC" bank account. Thus, the evidence clearly reflects that Harris and Hughes intended for the duties of employer—and the actions out of which Simms and Davis's claims arise—to be undertaken, legally speaking, by Scales 925 Atlanta, LLC, even if Hughes was the one who in fact undertook those duties on its behalf.

Simms and Davis argue that a common-law partnership existed because Harris identified Hughes as his "partner" on Instagram and in a discussion with Davis. But "the use of the label . . . does not by itself demonstrate the existence of a legal 'partnership' and all the rights and obligations engendered thereby," *Jerry Dickerson Presents, Inc. v. Concert S. Chastain Promotions*, 579 S.E.2d 761, 768 (Ga. Ct. App. 2003), particularly when that label is used colloquially, as it was here.

8

Simms and Davis next contend that Harris is not a member of either of the Scales LLCs.[5]  The district court rejected this argument based on the LLCs' operating agreements, which the court found were binding under Georgia law even though unsigned.  *See* O.C.G.A. § 14-11-101(18) ("A limited liability company is not required to execute its operating agreement, and, except as otherwise provided in the operating agreement, is bound by its operating agreement whether or not the limited liability company executes the operating agreement.").  According to these agreements, Scales 925 Atlanta, LLC, was wholly owned by Scales 925 Management, LLC, which, in turn, was jointly owned by Encore, Royal, and two individuals.  The court, noting that Royal was never a valid LLC, reasoned that any ownership interest in Royal's name belonged to Harris, the only alleged member of Royal.  The court therefore concluded that Harris was a member of Scales 925 Atlanta, LLC, through his membership—in place of Royal—in Scales 925 Management, LLC.

Simms and Davis respond with two arguments.  First, they assert that Royal could not have passed its interest to Harris because it was never capable of owning

---

[5] Simms and Davis do not explain how this argument helps them.  They did not allege any specific wrongdoing by Harris, and he was not listed as a party to the employment agreements and did not sign the agreements in any capacity.  So without more, he cannot be held personally liable.  *Kaesemeyer v. Angiogenix*, 629 S.E.2d 22, 25 (Ga. Ct. App. 2006) ("It is axiomatic that a person who is not a party to a contract is not bound by its terms.").  In any event, it appears that this argument is in service of their overall argument that Harris's relationship with the Restaurant was "either a partnership or joint venture."  We assume without deciding that it would be helpful to them and so address the merits of the court's ruling on this issue.

an interest.  Fair enough.  But under Georgia law, "[a]n undertaking by an individual in a fictitious or trade name is the obligation of the individual." *Nat'l Cash Register Co. v. Sikes*, 94 S.E.2d 391, 392 (Ga. Ct. App. 1956); *see Hawkins v. Turner*, 303 S.E.2d 164, 166 (Ga. Ct. App. 1983).  Because Royal was not a valid LLC, we agree with the district court that this general rule, as applied here, means that any ownership interest in Royal's name belonged to Harris.  No interest was "passed" from Royal.  Rather, Harris, as Royal's sole alleged member, personally held Royal's purported interest from the outset.

Second, without disputing the validity of the operating agreements, Simms and Davis argue that Harris never became a member because he did not sign the operating agreements.  We disagree.  The operating agreement for Scales 925 Management, LLC, did not require Harris to sign the agreement to become a member.  The agreement expressly designated certain members, including Royal (Harris) and Encore (of which Hughes was the sole member), and then included a provision for admitting new members.  Simms and Davis cite language from this provision in support of their claim that Harris was required to sign the operating agreement, but we agree with the district court that the cited language "applies only to admitting *new* members" not already designated in the agreement.

Simms and Davis next argue that the district court should have permitted them to proceed against Harris under a veil-piercing theory.  *See Christopher v.*

10

*Sinyard*, 723 S.E.2d 866, 867 (Ga. Ct. App. 2012) ("The concept of piercing the corporate veil is applied in Georgia to remedy injustices which arise where a party has overextended his privilege in the use of a corporate entity in order to defeat justice, perpetrate fraud or to evade contractual or tort responsibility."). They contend that the defendants had fair notice of that theory because they alleged fraud and deceit, which are legal grounds to pierce the corporate veil.

Simms and Davis have not shown that the district court erred by refusing to consider this theory at summary judgment. The claim of "fraud and deceit" alleged in the complaint had nothing to do with the legal structure of the Restaurant or how it was being operated by Harris and Hughes. Rather, it was about Hughes's alleged false statements to employees that they would be paid for working the Restaurant's grand opening and a New Year's celebration. And Harris's liability for the fraud claim, like his liability for the other claims, was based solely on a partnership theory of liability. There is nothing about these allegations that would have put the defendants on notice of a veil-piercing theory of individual liability.

Finally, Simms and Davis argue that their employment agreements are unenforceable and that they can prove that they had a contract with Harris personally. Not only is this argument inconsistent with the breach-of-contract claim in their complaint, which was based solely on the written employment

agreements, but it was raised on appeal only in the reply brief.  We decline to consider it.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("[W]e do not address arguments raised for the first time in a . . . litigant's reply brief.").

## IV.

For the reasons stated, we affirm the grant of summary judgment against Simms and Davis.

**AFFIRMED.**